Thomas S. Solomon and Margaret Solomon, minor children of Ellen Solomon, by their Guardian, William B. Holmes, Appellants, *v.* John Rogers and Nelson Jordan.

*Tenants in common—Liability for rent of cotenant in possession.*

In the absence of an express agreement by a tenant in common in possession there is no obligation implied on his part to account to his cotenants for the use and occupation of the common property. Kline v. Jacobs, 68 Pa. 57, followed.

Argued Jan. 16, 1900. Appeal No. 20, Jan. T., 1900, by plaintiffs, from decree of C. P. Wayne Co., Dec. T., 1891, No. 1, in partition distributing proceeds of real esate. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and MITCHELL, JJ. Affirmed. Opinion by W. W. PORTER, J.

Decree sustaining exceptions to master's report in partition and distributing proceeds accordingly. Before PURDY, P. J.

The facts sufficiently appear from the opinion of the court below as follows :

The fund for distribution arises from the sale, under proceedings in partition, of real estate which was devised to the parties by Margaret Jordan, deceased, subject to a life estate in her husband, Thomas Jordan, who died January 1, 1891. The premises consisted of a large village lot, on which were a dwelling house and garden. Nelson Jordan, the exceptant, occupied the premises until the decease of the life tenant, and paid rent therefor to him, and has since continued in such occupancy, exclusively, without any express agreement to pay for the use, but has received no rents or profits from the property aside from such occupancy. If he is liable to account for such use, it is admitted that such liability would be sufficient to extinguish the share (one third) which would otherwise accrue to him from the fund for distribution, which fund, exclusive of costs, is $300.

In stating above, the character of the exceptant's occupancy of the premises since the death of the life tenant, we use the term "exclusively" for the reason that it is the term used in the master's report in his statement of the facts admitted. It is however conceded that the exceptant did not prevent his cotenants from entering, or deny their right to do so ; but, after the death of the life tenant, the exceptant remained until the sale, as the sole occupant of the premises, without any agreement, dispute or controversy respecting the matter.

The legal question involved is this : In the absence of any agreement in the premises, may one cotenant, who is lawfully in possession of the common property at the inception of the possessory rights of his cotenants, continue his occupancy—holding not adversely but for himself and them, and receiving no benefits beyond his personal use of the premises—without liability to account to his cotenants for their proportionate share of the rental value ?

The learned master took the view that the case of Clayton v. McCay, 143 Pa. 225, rules that such occupying tenant is liable.

The question is somewhat interesting, in view of the opposing opinions of the courts of other states, and of the failure of the learned master to reconcile the opinion in Clayton v. Mc-

Cay, with the former opinions of our own Supreme Court touching this question.

By the common law a cotenant in possession of the property of the cotenancy could not be compelled to account to the others for use and occupancy, or from the rents and profits received from the estate, unless such rents and profits were received by him as bailiff of his cotenants. The common law upon the subject is thus stated in Coke on Littleton, 209*b*.

"If one joyn-tenant or tenant in common of land maketh his companion his baylife of his part, he shall have action of account against him, as hath been said. But although one tenant in common or joyn-tenant without being made baylife taketh the whole profits, no action of account lieth against him; for in an action of account he must charge him as guardian, baylife, or receiver, as hath been said before, which he cannot do in this case, unless his companion constitute him bailife. And, therefore, all those bookes which affirm that an action of account lieth by one tenant in common, or join-tenant, against another, must be intended when one maketh the other his bailife, for otherwise never his bailife to render an account, is a good plea."

This was the law until the enactment of the English Statute, 4 and 5 Anne, chap. 16, sec. 27 of which declared: "Actions of account shall and may be brought and maintained against the executors and administrators of every guardian, bailiff and receiver; and by one joint tenant and tenant in common, his executors and administrators, against the other as bailiff, for receiving more than comes to his just share or proportion; and against the executor and administrator of such joint tenant or tenant in common; and the auditors appointed by the court, where such action shall be pending, shall be and are hereby empowered to administer an oath, and examine the parties touching the matters in question and, for their pains and trouble in auditing and taking such account, have such allowance as the court shall adjudge to be reasonable, to be paid by the party on whose side the balance of the account shall appear to be."

This statute altered the law so far as to create a liability of the tenant in common to account only "where as bailiff he received more than comes to his just share or proportion:" Fil-

bert v. Huff, 42 Pa. 97; Norris v. Gould, 15 W. N. C. 187; Kline v. Jacobs, 68 Pa. 57.

Our own courts have construed this statute to relate only to rents or profits received from another, and not to benefits accruing to one from personal use or occupation of the common property; and hold that as between tenants in common, where the situation is not such as to create the relation of landlord and tenant, and where there is no ouster or adverse holding, and no rents received from third persons, there is no liability to account: Kline v. Jacobs, 68 Pa. 57; Oil & Gas Co. v. Transit Co., 172 Pa. 421. A different rule prevails in many of our states, but as was said by the author in a foot note to Ward v. Ward, 52 Am. Rep. 924: "A slight preponderance of authority affirms that where the common law still prevails, and where it has been no further modified than by statutory provisions of import similar to those to be found in the statute of Anne, one cotenant is not answerable to another merely for using more than his proportion of the common property, although realizing profits from such use."

In the present case the exceptant was in lawful possession. He had a right to that possession, and did not deny the right of his cotenants to enjoy the common property with him. He was not required to vacate the premises because his cotenants did not choose to assert their right of common enjoyment. The relation of landlord and tenant, which existed between the exceptant and the life tenant, ended with the death of the landlord and was not renewed between the exceptant and his cotenants. There was no agreement to account, and no actual or constructive ouster. A constructive ouster does not arise between tenants in common, but must be proved by decisive acts of a hostile character: Watson v. Gregg, 10 Watts, 289; Bennett v. Bullock, 35 Pa. 364. Ouster depends upon the intent of the holder. Where the cotenant enters upon the realty of the cotenancy the law presumes that he intends nothing beyond the assertion of his rights: Freeman on Cotenancy and Partition, sec. 231; Philips v. Gregg, 10 Watts, 158; Forward v. Deetz, 32 Pa. 69. The possession of one cotenant is the possession of all until he performs some act which indicates that the possession is exclusive.

In Clayton v. McCay, supra—under authority of which the

learned master is of opinion the exceptant must be held to ac-
count—the defendants were in possession of the premises, for
the use of which it was sought to charge them, from April 1,
1885, until April 1, 1888, under an agreement to "account for
and pay over or be charged with rents" for such portion of
the premises as should be determined by the litigation then
pending, belonged to the plaintiffs. The will, which was the
subject in controversy, was set aside, and April 11, 1887, the
plaintiffs brought ejectment to recover possession of their un-
divided shares, as cotenants, in the premises then occupied by
the defendant under the aforesaid agreement, and obtained
judgment October 3, 1887. This judgment was affirmed on
writ of error taken by the defendants, and final judgment en-
tered on remittitur from the Supreme Court, March 6, 1888.
On December 24, 1887, the defendants gave the plaintiffs no-
tice that they were unwilling to continue on the farms occupied
by them for another year under existing "terms as to rent,"
and unless a satisfactory arrangement could be made they would
vacate on the first of April following, which the notice desig-
nated as "the end of our present terms." They did so vacate,
but while in possession, they had sublet to others portions of
the premises, for the year ending March 25, 1889.

The relation existing between the plaintiffs and defendants,
April 1, 1888, was substantially that of landlord and tenant,
and others were in possession of a portion of the premises, un-
der a lease from the defendants for the year following.

Mr. Justice STERRETT in the opinion says: "They admit
that they obtained possession of those lands, and so held them
until April 1, 1888, by virtue of that agreement; and the find-
ing of the master that their possession continued until April 1,
1899, must, in the absence of manifest error, be assumed to be
the fact. The admission of the appellees that their tenants
continued in possession of part of the premises, in itself justi-
fies the finding. The possession of these tenants was their
possession; they could not subject the appellants to the risk,
delay and expense of litigation in turning the tenants out.
In contemplation of the agreement, and in good faith, they
were bound to restore possession as fully as they had received
it by virtue of that agreement. Having obtained exclusive

possession by virtue of the agreement, they must account for the whole period of that possession."

We do not see that this decision is in conflict with Kline v. Jacobs, or Morris v. Gould. It is true that in Clayton v. McCay, Mr. Justice STERRETT adds to the language above quoted: "Had they taken possession without the consent of the appellants, they must now have accounted. When the will was set aside, they became tenants in common, and liability to account for the use of their cotenants' share in the land so used became an incident. It is therefore immaterial whether their exclusive possession was with or without the consent of the appellants; they were equally liable to account." But this was mere comment respecting a liability that would result from a state of facts that were foreign to the case, and we do not believe it was the intention to overrule Kline v. Jacobs and other kindred cases. If so it is anomalous that it should be done without reason assigned or reference to former decisions. The more recent case of Oil & Gas Co. v. Transit Co., 172 Pa. 421, is also authority showing that the rule contended for by the exceptant is still in force.

It is however argued by counsel for the respondent, that if trespass for mesne profits, assumpsit, or account render, would not lie by the cotenants to recover a proportionate share for the use and occupation of the premises, still the master may charge the exceptant with such shares and make equitable distribution as he has done. But the rule, as we understand it, is not based upon want of a remedy to enforce a right, but upon the ground that the cotenant, so occupying the property of the cotenancy, has done nothing and has received nothing for which he should account.

From these observations it follows that the exceptions should be sustained. Plaintiffs appealed.

*Error assigned* was in sustaining exceptions to the master's report and the refusal to hold Nelson Jordan, the cotenant in possession, liable for the use and occupation of the premises.

*H. Wilson,* with him *A. T. Searle,* for appellants.—The question here is not whether a tenant in common, holding exclusive possession, is liable for the use and occupation of the property

held in common; the question is whether a tenant in common of the remainder in fee, who has held as lessee of the life tenant, and after his death has held over, is, in equity, to be charged with his proportion of the rental value, on distribution, after the land has been converted into money for purpose of distribution. The only Pennsylvania case bearing on the question is Clayton v. McCay, 143 Pa. 225.

*F. P. Kimble,* for appellee, presented no paper-book.

OPINION BY WILLIAM W. PORTER, J., March 21, 1900:

The questions involved in this case have been thoroughly considered and rightly decided in an able opinion by the court below. The judgment might well be affirmed upon that opinion. There is, however, an alleged discord in the judgments of the Supreme Court upon the main question involved. In Kline v. Jacobs, 68 Pa. 57, the rule is laid down that there is no implied obligation to account for use and occupation by one tenant in common, who has by his title a right of possession of the whole (although it is joint), and that assumpsit can only be maintained on an expressed promise to pay rent or account. In Clayton v. McCay, 143 Pa. 237, language is used which seems to indicate that tenants in common in sole possession without the consent of their cotenants are liable to account. In that case, however, the tenants in common were in possession under an agreement of lease with their cotenants, pending litigation over the will of their common ancestor, from whom they took title to the several tracts of land, severally, by devise if the will was sustained, or jointly as tenants in common if the will fell. The will was not sustained. The cotenants of certain property remained in possession under the lease from their co-owners, after the issue devisavit vel non was determined. The question in the case was, whether they were liable by virtue of the original agreement for rental value for the time they continued in possession and after an attempted surrender. The possession after the vacation of the premises was in part continued by subtenants. The language of the opinion must be construed with reference to the facts of the case then before the court. The occupation was not by virtue of title as tenants in common, but by virtue of an agreement between tenants in com-

mon stipulating for the payment of rent.   It is upon this ground that the decision goes.   The expressions used in regard to a liability to account by a cotenant in exclusive possession, doubtless refers to an adverse possession.   We do not find in the case an intention on the part of the court to overrule the doctrine of Kline v. Jacobs, supra, and other kindred cases, especially as the case of Enterprise, etc., Co. v. National Transit Co., 172 Pa. 421, decided since Clayton v. McCay, supra, recognizes in terms the authority of Kline v. Jacobs.

The judgment of the court below is affirmed.